IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PATRICK GENE RUSSELL, ) | |
| ID # 18016446, ) | |
| Plaintiff, ) | |
| vs. ) | No. 3:18-CV-3246-M-BH |
| ) | |
| DALLAS COUNTY JAIL, et al., ) | |
| Defendants. ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims should be **DISMISSED with prejudice**.

**I.  BACKGROUND**

Patrick Gene Russell (Plaintiff) sued the Dallas County Sheriff (Sheriff), unnamed administrative personnel, jail guards and medical staff at the Dallas County Jail (Jail), Parkland Hospital (Parkland) supervisors at the Jail, and a doctor (Doctor) under 42 U.S.C. § 1983 based on the alleged failure to provide him with an appropriate diet. (Doc. 3 at 3.[2])  He subsequently amended his claims to describe the unnamed administrative personnel at the jail as "the people in black uniforms with Captain bars" (Jail Administrators), the Parkland Hospital supervisor as a "Hindi male, older" (Parkland Supervisor), and jail guards as "Officer West" and "a tall, large black male who kicked [him] as [he] vomited" (Jail Guards).  (*See* doc. 3 at 3; doc. 8 at 4-7; doc. 19 at 13-16.)  He also clarified that he is suing all defendants in their official capacities, and that he is also alleging negligence.  (*See* doc. 8 at 1, 3, 4, 6, 7; doc. 19 at 13, 15-17.)

Plaintiff generally claims that Sheriff failed to "oversee inmates . . . control staff, [or]

---

[1]  By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

properly train staff at [the] jail, resulting in torture." (Doc. 3 at 3.) Jail Administrators allegedly failed to properly feed inmates or control staff, served him food to which he was allergic, created a policy to deny him food he could eat, and enforced a policy of ignoring inmates' allergies. (*See* doc. 3 at 3; doc. 8 at 4; doc. 19 at 15.) He claims that Parkland Supervisor failed to oversee medical staff at the Jail and ignored his complaints regarding his allergies and dietary restrictions. (*See* doc. 3 at 3; doc. 8 at 6; doc. 19 at 16.) Doctor allegedly ignored his notes and statements that he was allergic to ginger, placed him on a diet containing ginger despite knowing he was allergic to it, and continued to ignore his complaints of ginger in his meals even after he complained to her of an upset stomach and vomiting. (*See* doc. 8 at 3; doc. 19 at 8-11.) Finally, Plaintiff claims that Jail Guards refused to provide him with medical assistance after he had an allergic reaction to a ginger muffin. (*See* doc. 8 at 7; doc. 19 at 13-14.) He claims he was "unable to eat in whole or in part" for over thirty days due to ginger being a part of the meal, and that he has suffered hunger, vomiting, and weight loss as a result. (*See* doc. 19 at 2, 5.)

Plaintiff seeks monetary damages, to be "placed on a 'PR' bond until [his] trial," and to have his trial moved out of Dallas County. (*See* doc. 8 at 11.) No process has been issued.

## II. PRELIMINARY SCREENING

Plaintiff is an inmate at the Dallas County jail who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any

portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a § 1983 claim, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.      Habeas Relief**

Part of the relief that Plaintiff seeks through this § 1983 action is release from custody.

Release from imprisonment, or habeas relief, is an inappropriate remedy in a § 1983 action, however. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). A prisoner may only challenge the fact or duration of confinement within the exclusive scope of habeas corpus. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). Plaintiff may only obtain declaratory or monetary relief in this § 1983 action, so he fails to state a cause of action upon which relief may be granted on his request for release.

**B.     Change of Venue**

Plaintiff seeks to have his trial moved out of Dallas County. Although unclear, because he is a pre-trial detainee, it appears that he seeks to have a criminal case moved out of Dallas County. A criminal defendant allegedly prejudiced at the trial court level may not get relief by bringing a federal lawsuit under § 1983, but rather by availing himself of the appropriate state procedures. *See generally O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (stating that "recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is both 'great and immediate'"). Plaintiff makes no showing of a great and immediate irreparable injury. His request for his trial to be moved out of Dallas County also fails to state a cause of action upon which relief may be granted.

**C.     Official Capacity Claims**

Plaintiff specifically sues all defendants in their official capacity.[3]

---

[3] Because Plaintiff expressly states that he sues the defendants in their official capacities, it is not necessary to examine the course of proceedings to determine the capacity in which he sues them. *See Adrian v. Regents of Univ. of Calif.*, 363 F.3d 398, 402-03 (5th Cir. 2000) (noting that while it was unclear whether the complaint named employees in their official or personal capacities, the course of proceedings demonstrated that they were only named in their official

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's official capacity claims are therefore essentially claims against their government employer, Dallas County (County). *See id*; *Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *3 (N.D. Tex. June 27, 2013) (citing *Graham*, 473 U.S. at 165).

**D.    Municipal Liability**

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05–CV–798–A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id*. (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir.

---

capacities; the plaintiff had not challenged the assertion that the employees should be dismissed because they were only named in their official capacities) (citing *Graham*, 473 U.S. at 167 n. 14); *Harmon v. Dallas Cty.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018) (noting that courts generally look to the course of the proceedings to determine the nature of liability sought to be imposed when a plaintiff does not specify the capacity in which an official is sued) (quoting *Adrian*); *but see Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. 2008) (when a pro se plaintiff does not specify whether a defendant in named in his official or individual capacity, it is generally presumed by operation of law that the defendant is named in his official capacity) (citations omitted).

5

2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691–95.

"Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying

constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id.*

In addition, a single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).

    1.    *Food allergies*

Here, Plaintiff identifies "the sheriff or captains" as policymakers, and describes the

official policy or custom as "[t]hey must be told by medical staff of food allergies and ignore the inmates who have the allergy." (*See* doc. 19 at 12.) This is insufficient to demonstrate municipal liability. Plaintiff does not allege a specific policy that was officially adopted and promulgated by the County's lawmaking officials, and he does not allege any persistent and widespread practice that caused his alleged injuries. *Monell*, 436 U.S. at 691–95. He has therefore failed to state a viable § 1983 claim against Dallas County based on the alleged failure to address his dietary and medical needs due to his allergy to ginger. *See Beavers v. Brown*, No. 3:13-CV-1395-B, 2013 WL 6231542, at *3 (N.D. Tex. Dec. 2, 2013) (finding that claims against county employees in their official capacities should be dismissed); *Stiff*, 2013 WL 3242468, at *3–4 (same).

      2.     *Failure to Train or Supervise*

Plaintiff alleges that the Sheriff "fail[ed] to control staff, fail[ed] to properly train staff at jail resulting in torture," (*see* doc 3 at 3), and failed "to train and oversee Dallas County Jail staff." (Doc. 8 at 1.) He also alleges that the Parkland Supervisor failed to "oversee doctor's actions" (doc. 8 at 6), and failed in "monitoring actions of subordinates," (doc. 19 at 16.), and that Jail Administrators "fail[ed] to control staff." (Doc. 3 at 3.) He also alleges that each party was deliberately indifferent to his health and safety because "all parties were informed of [his] allergy's severity the day [he] was booked into [jail]," and they "were reminded constantly" of the severity of his allergies. (*See* doc. 19 at 18.)

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir.

8

2009) (citing *Brown v. Bryan County, Ok*, 219 F.3d 450, 458 (5th Cir. 2000)). "The failure to train must reflect a 'deliberate' or 'conscious' choice by a municipality." *World Wide Street Preachers Fellowship*, 591 F.3d at 756 (quoting *City of Canton*, 489 U.S. at 389) (internal quotation marks omitted). The Supreme Court has stated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Similarly, the failure to supervise or inadequate supervision can amount to a policy if a municipality "supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). "In order to hold a municipality liable under § 1983 for failure to train or supervise, the plaintiff must show that (1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's injury." *Clyce v. Hunt County, Tex*, 515 F. App'x 319, 323 (5th Cir. 2013) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam).

Plaintiff's conclusory allegations are insufficient to demonstrate municipal liability. He alleges no facts to demonstrate that the County's alleged failure to train or supervise was due a policy or custom, that its training procedures were inadequate, or that an authorized policy maker of the County was deliberately indifferent to an alleged unconstitutional policy or custom. Because he does not demonstrate the required elements, and relies on general and conclusory allegations, Plaintiff's allegations do not support a finding of municipal liability under a theory of failure to train or supervise. *See Twombly*, 550 U.S. at 555; *Spiller*, 130 F.3d at 167 (citing

9

*Fraire*, 957 F.2d at 1278.

### E. Negligence

Plaintiff also alleges that the defendants were negligent. (*See* doc. 19 at 17.)

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of [state] tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Negligence is not actionable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (stating that "[r]espondents' lack of due care . . . simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent"). Even if the defendants' alleged negligence caused an unintended injury, Plaintiff has not stated a violation of his constitutional rights. *See Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 635 (5th Cir. 1999) (holding that negligence by state officials does not constitute a due process violation under the Fourteenth Amendment). Plaintiff's allegations of negligence are insufficient to impose liability under § 1983. *See Brumfield v. Hollins*, 551 F.3d 322, 333 (5th Cir. 2008); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Because his claim of negligence is not actionable under § 1983, it should be dismissed for failure to state a claim.

## VI. RECOMMENDATION

Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). This dismissal will count as a "strike" or "prior occasion"

within the meaning 28 U.S.C. § 1915(g).[4]

**SO RECOMMENDED on this 11th day of October, 2019.**

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE

---

[4] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.